"Welch, C. J.
The plaintiffs seek to enjoin the defendants from taking any steps for the removal of the county seat in question, on two several grounds. They say, in the first place, that the act of 1874 is unconstitutional. In the second place, they say that the measures adopted, and threatened or intended to be carried into execution, are not in pursuance of the provisions of the act.
The defendants, while they deny both of these propositions, insist also that they have done no act, and as a board-have made no threats or declarations of intention to remove the county seat, and that the action, therefore, is prematurely brought.
We think this position of the defendants is not well taken. The fact that the court below has found upon the-evidence that “ there is good reason to believe ” that the defendants will proceed to act in the premises, and complete the measures in progress for the removal, is sufficient to justify the interference of the court by injunction, provided either of the propositions of the plaintiffs can be maintained. In other words, if the act of 1874 is unconstitutional, or if the measures adopted and in process of completion are not substantially in accordance with its requirements, then the injunction should be granted.
The plaintiffs claim that the act of 1846 is unconstitutional, because it is in the nature of a contract, to the effect that if the citizens of Canfield would make the donation required, the county seat should never be removed from Canfield, or, at least, should not be removed without mak *626 ing compensation to them; and that the law of 1874 impairs the validity of this contract, and is, therefore, contrary to the constitution of the United States. To this proposition, we can by no means assent. "We think there are three good reasons why it can not be admitted as the law of the case.
1. The power to establish and remove county seats is one which can not be parted with by legislative contract. It is not the subject of contract. Ho case or authority is cited by counsel, and it is presumed none can be shown, sustaining or enforcing any such contract; while several cases are adduced (4 Blackf. 208; 8 Texas, 297; 11 111. 836; 13 lb. 456) to show that it is a contract which there is no legislative power to make.
2. Nothing is better settled than the principle that, in order to make a legislative contract or grant, the words of the act must be certain and direct, and must clearly show the legislative intent. The contract or grant can not be inferred, or made to rest in implication. See 16 Howard, 416; 1 Ohio St. 574; 18 lb. 574; 3 Wallace, 75; 11 Pet. 420. Such is by no means the language of the act of 1846. It merely creates the county, “ with the county seat at Can-field,” and then provides that it shall not be “ considered as permanently established at Canfield,” until the donation is made. Especially ought this rule of strict construction to be applied in a case like the present, where it must be conceded that the exercise of the power, to say the least, is of doubtful constitutionality.
3. If we concede the power, and concede that the language of the act of 1846 sufficiently shows an intention to exercise it, we do not think the contract is violated, or its validity impaired by the act of 1874. By the word “ permanently,” as used in the act of 1846, we do not understand that the county seat was to remain forever at Canfield. The word is surely susceptible of a different and narrower meaning, and surely the nature of the subject-matter requires that meaning. “ Permanently established,” as used in the act, simply means “ established as other county seats *627 are established.” Until the donation should be made, or the commissioners provided for in the general law for locating county seats in new counties should act in the matter, the seat of justice was to be provisionally or temporarily established at Canfield, but subject, as all other county seats were subject, to be changed by future legislation. If, therefore, we are to regard this as a contract, it has been fulfilled on the part of the state. The supposed contract was that the citizens should make the donation in consideration that the county seat should remain at Canfield, until removed by subsequent act of the legislature. The donors have had thirty years’ enjoyment under this alleged contract, and I suppose when the county seat comes to be removed that their property will revert to them again. I do not see on what ground they can justly complain. If there was a contract, they have had its full benefit.
If this reasoning is correct, it fully answers another objection made to the act of 1874, on the ground of unconstitutionality—namely, that it seeks to take private property for public use, and is therefore in violation of section 19, article 1 of the state constitution. If there was no contract or grant, or if the thing granted has been fully enjoyed, then there is no private property to be taken.
It is claimed, also, that the act of 1874 is in conflict with section 16 of article 1 of the state constitution, because it is made to take effect upon the approval of an authority other than that of the general assembly, to wit, “ when suitable buildings shall have been erected.” If the act will admit of a construction which makes it consistent with the constitution, we are bound to adopt that construction. It seems to us that there is no difficulty in the way of such a construction here. ¥e know that the words “take effect,” or the words “ be in force ” sometimes mean “ become a law,” and sometimes mean “be enforced or executed.;” and that the context must be looked to in order to determine which of the two meanings they are to have. We think it quite manifest, when the second and fifth sections of the act are read together, that these words, as *628 used in the second section—at least the latter words, “ and be in force ”—when applied to the erection of the. buildings, must have the latter meaning; that is, they must be understood in the sense that the law shall not be enforced or carried into execution, till the buildings should have been erected. In the light of the fifth section, we think the second section must be read as providing “ that the first section of the act shall become a law when adopted by a majority of the electors of the county, but shall not be enforced or carried into execution until the buildings shall have been erected.”
But it is objected that the measures adopted and proposed to be carried into execution are not in conformity to the act; that the lots on which the buildings are being erected are the property of the city, and not of individual citizens; and also that the city council has no power to convey them.
If the city has the power to make the conveyance, it is not easy to see on what ground the plaintiffs can object. The law imposes the condition that the citizens shall make the donation ; and if a third party makes the donation for them, it would seem to have the same effect in law as though they made it themselves.
But had the city council the power? The authority given to a city council to sell its real estate, it is said, can only be exercised “ upon the recommendation of the board of city improvements,” and here there was no such recommendation. See Municipal Code, sec. 676.
The answer to this objection is that the city of Youngstown had no such board; and that by section 602 of the code, as amended in 1870, the city council, in such cases, perform all the duties required of the board of -improvements. It is true, as counsel claim, that the power to sell is not a power to give away. But this was not, in form, a gift. The consideration named in the deed is “ ten dollars,” which in law, though in this case merely nominal, is sufficient to support the legal conveyance. The legal title passed by the conveyance, and it can only be avoided, if at *629 .■all, by a bill in chancery, at the suit of the beneficiaries of the property. When such a bill is filed, it will be time •enough to consider the question whether their rights have ■not been lost by standing by and silently permitting the buildings to be erected upon the lots. It will then be, perhaps, time enough for the citizens of the city and township to determine whether they will raise money and pay the •city the full value of the lots.
We fail, therefore, to see any good reason for granting the injunction sought, and the petition must be dismissed.
White, Rex, Gilmore, and McIlvaine, JJ., concurred.